IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SHARON KAY PHILLIPS                                                                    PLAINTIFF

V.                              CIVIL NO. 10-5062

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                         DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Sharon Kay Phillips, brings this action pursuant to 42 U.S.C.§ 405(g), seeking judicial review of a decision of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental social security income (SSI) benefits under the provisions of Title II and XVI of the Social Security Act (Act). In this judicial review the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C.§ 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed an application for DIB and SSI on July 21, 2006, alleging an inability to work since May 2, 2005, due to Depression, Personality Disorder, and Post-traumatic Stress Disorder. (Tr. 110-119, 78-80, 81-85). On November 24, 2006, Plaintiff updated her application to include complaints of pain in both her hands, pain in both knees, back pain, pain in her right leg, and pain in her left shoulder. (Tr. 129-137). For DIB purposes, Plaintiff's date of last insured was December 31, 2010. (Tr. 95). An administrative hearing was held on April 17, 2008, at which the Plaintiff appeared with counsel and testified. (Tr. 11-33).

By written decision dated August 8, 2008, the Administrative Law Judge (ALJ) found that

during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 43-45). Specifically, the ALJ found Plaintiff had the following severe impairments: depression and borderline personality disorder. (Tr. 43-45). However, after a review of all of the evidence, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 45-46). The ALJ found Plaintiff retained the residual function capacity (RFC) to perform:

> work activities at all exertional levels, but is mildly limited in the ability to understand, remember and carry out simple instruction, make judgments on simple work-related decisions, and respond appropriately to usual work situations and routine work changes. She is moderately limited in the ability to understand, remember, and carry out complex instructions, and interact appropriately with the public, co-workers and supervisors.

(Tr. 46-47). With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform her past relevant work as a janitor. (Tr. 47-48). In addition, the VE also found that Plaintiff could perform work in the national economy as a production worker, sewing machine operator, and cashier. (Tr. 48).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on February 17, 2010. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 5). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 9,12).

**II.     Evidence Presented:**

At an administrative hearing held before the ALJ on April 17, 2008, Plaintiff testified that she was born in 1965, and had obtained a high school education. (Tr. 14). The record reflects Plaintiff's past relevant work consists of work as a custodian. (Tr. 33).

On July 27, 2005, Plaintiff had an initial diagnostic interview with David E. Montgomery,

a Licensed Professional Counselor (LPC), at the Ozark Guidance Center. (Tr. 191-193). Plaintiff reported that she had always been depressed, that she often lost her train of thought, and her thoughts often overlapped making it difficult to communicate with others. Mr. Montgomery noted a diagnosis of:

> Axis I-none
> Axis II-Borderline Personality Disorder and Depressive Disorder not otherwise specified (NOS)
> Axis III-none
> Axis IV -problems with primary support group, problems related to social environment, occupational, housing, and economic problems, problems with access to health care, and other psychological and environmental problems
> Axis V-Global Assessment of Functioning (GAF) score of 50.

(Tr. 192). He recommended that Plaintiff go to the Borderline Personality Disorder group program.

Records reflect that on six different occasions, from August 3, 2005 to April 18, 2006, Plaintiff saw Mr. Montgomery at the Ozark Guidance Center for therapy to treat her depression. (Tr. 178-190). On each occasion, Plaintiff's progress was noted as improving, mixed, or maintaining. (Tr. 178-190).

On June 13, 2006, Plaintiff underwent a psychiatric assessment by Dr. Adrell William Diessner of the Ozark Guidance Center. (Tr. 175-177). Plaintiff reported that she had been experiencing auditory hallucinations since her teenage years. Plaintiff stated that at times she felt "woosy" and wondered what happened during the proceeding time interval. Dr. Diessner noted a final diagnosis of:

> Axis I- Psychoses NOS
> Axis II- Borderline Personality Disorder
> Axis II- Deferred
> Axis IV- Stressors, Relationships
> Axis V- GAF score 38

(Tr. 176).  Dr. Diessner instructed Plaintiff to continue to go to the Borderline Personality Disorder group, and started her on 5 mg Abilify nightly.

On July 18, 2006, Plaintiff saw Dr. Diessner for a check on her medications.  (Tr. 195). Plaintiff reported that the auditory hallucinations were gone.  In addition, Plaintiff reported that she was much happier and did not have as many thoughts running through her head.  Dr. Diessner noted that Abilify may be all the Plaintiff needed.

On September 6, 2006, Plaintiff saw Dr. Diessner for a check on her medications.  (Tr. 218). She reported that she was not sleeping well, felt more nervous, and wanted to increase her medication. Dr. Diessner noted that she had low grade anxiety, but no active psychosis or movement disorder. He increased the Plaintiff's Abilify to 10 mg daily.

On September 9, 2006, a Mental RFC Assessment was completed by a non-examining consultative Psychologist, Dr. Brad Williams. (196-198).  Under the category of understanding and memory, Dr. Williams noted that Plaintiff was moderately limited in her ability to understand and remember detailed instructions.  (Tr. 196).  Under the category of sustained concentration and persistence, he noted that Plaintiff was moderately limited in the ability to carry out detailed instructions, to maintain attention and concentration for extended periods of time, to make simple work-related decisions, to complete a normal work-day or work-week without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 197).  Under the category of social interaction, Dr. Williams noted Plaintiff was moderately limited in the ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors.  (Tr. 197). Finally, under the category of adaption, he noted Plaintiff was moderately limited in the ability to

set realistic goals or make plans independently of others. (Tr. 197). Dr. Williams concluded that Plaintiff would be able to perform work where interpersonal contact was incidental to work performed, the complexity of tasks was learned and performed by rote, with few variables, and little judgment, and the supervision required was simple, direct, and concrete. (Tr. 198). Dr. Williams further noted that Plaintiff's limitations were primarily social and not to a marked degree, so she should be able to perform unskilled work. (Tr. 212).

On October 31, 2006, Plaintiff saw Dr. Diessner for a check on her medications. (Tr. 217). Dr. Diessner noted that Plaintiff was appreciative of getting her thoughts slowed by Abilify. He continued her 10 mg Abilify and started on her Ambien.

On March 22, 2007, Plaintiff entered into the Community Clinic at St. Francis House upon referral from Ozark Guidance Center about a possible Thyroid issue. (Tr. 231-233). Plaintiff had gained 53 pounds in 6 months. (Tr. 231). A Thyroid panel was run, and all results came back with the normal limits. (Tr. 233).

On March 27, 2007, Plaintiff saw Dr. Diessner for a check on her medications. (Tr. 243). The Plaintiff reported that she was "definitely doing better than when I first saw you." Dr. Diessner noted Plaintiff's prognosis as improving, and increased Abilify to 15 mg daily and added Paxil at 10 mg daily and Clonidine 0.1mg at bedtime.

On April 25, 2007, Plaintiff saw Dr. Diessner for a check on her medications. (Tr. 242). Plaintiff reported that she was stilling battling depression but was definitely better. She was able to describe the beneficial effects of her medications. Dr. Diessner continued her on Abilify, Paxil, and Clonidine, and instructed her to continue in her group program.

On May 10, 2007, Plaintiff underwent a mental diagnostic evaluation by Dr. Ronald E.

McInroe. (Tr. 222-227). Plaintiff reported that she was often unhappy, cried a lot, and slept excessively. (Tr. 224). She stated that she had suicidal thoughts daily. She reported that she last acted on her suicidal thoughts three years prior by trying to overdose. Plaintiff further reported having panic attacks. In addition, she reported having intrusive memories and flashbacks about past sexual abuse. Dr. McInroe noted a final diagnosis of:

>  Axis I- Panic Disorder with Agoraphobia, Sexual Aubuse of a Child (victim), Posttraumatic Stress Disorder (chronic type)
>  Axis II- Borderline Personality Disorder (by history)
>  Axis III- None
>  Axis IV- None
>  Axis V- GAF 68

(Tr. 225). In addition, Dr. McInroe noted that the Plaintiff reported that she could not work, sometimes could not stand, and struggled getting dressed in the morning because of pain. He found that Plaintiff was mildly limited in her ability to: understand and remember simple instructions; carry out simple instructions; make judgments on work-related decisions; and respond appropriately to usual work situations and changes in a routine work setting. (Tr. 227-229). He further found Plaintiff was moderately limited in her ability to: understand and remember complex instruction; carry out complex instructions; make judgments on complex work related decisions; interact appropriately with the public, supervisors, and co-workers. (Tr. 227-229). Dr. McInroe concluded that Plaintiff had the capacity to engage in the demands of basic work tasks. (Tr. 225). He noted that Plaintiff did not "appear to be experiencing any significant deficits in the ability to attend and concentrate nor the capacity to sustain persistence in completing tasks." (Tr. 225-226).

On June 19, 2007, Plaintiff saw Dr. Diessner for a check on her medications. (Tr. 241). Plaintiff was continued on Abilify 15 mg, had Clonidine increased from 0.1 to 0.2 mg nightly and

Paxil increased from 10 to 20 mg. On July 30, 2007, Dr. Diessner continued Plaintiff on each of these prescriptions. (Tr. 240).

On August 27, 2007, Plaintiff saw Dr. Diessner for a check on her medications. (Tr. 239). She reported that she was feeling fine during the day. However, she was still having trouble sleeping. Dr. Diessner continued the Plaintiff on Abilify 15 mg daily, prescribed Hyroxizine 20 mg daily, and changed Clonidine from 0.2 mg nightly to 0.1 mg twice a day. On September 24, 2007, Plaintiff had her medications adjusted again. Dr . Diessner placed her on Abilify 15 mg, Paxil 20 mg, Clonidine 0.1 mg in the morning, and Trazadone 50 mg at bedtime. (Tr. 238). On October 16, 2007, Plaintiff reported that since the addition of Trazodone to her medications, she was sleeping better, her mood was better, and she was happier. (Tr. 237). Dr. Diessner continued her on the same medications.

On December 13, 2007, Plaintiff saw Dr. Diessner for a check on her medications. (Tr. 236). Plaintiff reported muscle, right leg, and shoulder pains. She stated that she could not afford to see a doctor about this pain. Dr. Diessner noted that this "sounds like some fibromyalgia." (Tr. 236). He continued Plaintiff on Abilify, Clonidine, and Trazadone, started her on Amitripyline, and took her off Paxil. On January 24, 2008, Plaintiff returned to Dr. Diessner, and he added Hydroxzyine to her medications. (Tr. 235).

On April 17, 2008, at her hearing before the ALJ, Plaintiff testified that she stopped working her full-time job as a custodian in 2005 due to problems with her right leg. (Tr.16-17). She stated that Dr. Diessner told her this pain was due to fibromyalgia. (Tr. 17). She reported that she dealt with her pain from fibromyalgia by taking Ibuprofen and lying down and resting. (Tr. 25). She explained that she had not seen a doctor for her fibromyalgia because she could not afford to do so.

(Tr. 25). She testified that she had been going to Ozark Guidance Center on a weekly basis for group therapy with the Borderline Personality group, and on a monthly basis to see Dr. Diessner for medication adjustments. (Tr. 21). She stated that she could go to Ozark Guidance Center because they did not "hound" her for money, and once every three to four months they would write her off as bad debt. (Tr. 25). She reported that she was currently working part-time as a parking lot attendant for sporting events at the University of Arkansas almost every week, 3 to 12 hours a week. (Tr. 23-24).

In a letter to Plaintiff's counsel dated April 30, 2008, Dr. Diessner stated he believed that the Plaintiff had fibromyalgia, and that seeing a rheumatologist would be helpful. (Tr. 248). He also stated that he believed that the Plaintiff "would have a difficult time staying calm enough to function in a fulltime [sic] competitive work environment." (Tr. 248).

### III. Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and

one of those position represents the findings of the ALJ, the decision of the ALJ must be affirmed. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairments" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R.§ 404.1520.

**IV.　Discussion:**

Plaintiff contends that the ALJ erred in concluding that she was not disabled during the

relevant time period. Defendant argues substantial evidence supports the ALJ's determination.

### A. Plaintiff's Impairments

The ALJ found that Plaintiff had the following severe impairments: depression and borderline personality disorder. However the ALJ found that Plaintiff did not have impairments that met or medically equaled a listed impairment. He considered the listed impairments related to affective disorders, found in section 12.04, and personality disorders, found in section 12.08, and concluded that Plaintiff's severe impairments were not of such a severity, either singly or in combination, to meet one of the listed impairments. Considering the record as a whole, and reviewing Listing 12.04 and 12.08, the Court believes there is substantial evidence to support the ALJ's conclusion that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

### B. Subjective Complaints and Credibility Analysis:

Plaintiff contends that the ALJ erred in discrediting her complaints of pain and her alleged impairment of Fibromyalgia. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medications; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart,

314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Although Plaintiff contends that her impairments were disabling during the relevant time period, the evidence of record does not support this conclusion.

Despite Plaintiff's complaints of chronic pain, the record is void of any treatment sought related to this pain. Plaintiff testified that she treated her pain by taking Ibuprofen and lying down and resting. Failure to seek regular treatment or obtain pain medication has been found to be inconsistent with complaints of disabling pain. Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996); Citing Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987). The United States Court of Appeals for the Eighth Circuit has stated that "A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). Plaintiff argues that she did not seek treatment because she could not afford to see a doctor. However, the Court notes that on one occasion, Plaintiff was referred to the Community Clinic at St. Francis House, a free health clinic, for treatment of a possible thyroid problem. (Tr. 231-233). Despite Plaintiff's claims that her pain has prevented her from working a full-time job since 2005, the record is void of any evidence of Plaintiff attempting to make any arrangements to seek treatment for her pain at the St. Francis House or any other free clinic.

In addition, Plaintiff's own report of her daily activities is inconsistent with chronic pain. In a Functional Report dated August 14, 2006, the Plaintiff reported that her daily activities included doing laundry, cleaning her house, and cross-stitching. (Tr. 123, 125). At the hearing, Plaintiff testified that she cleaned her apartment "in spurts," usually cleaning the kitchen. (Tr. 28). Plaintiff

mentioned only minor restrictions in her activities because of her pain. She reported that she had a hard time getting dressed in the morning. In addition, she testified that she had a hard time putting things in the kitchen that belonged up high, due to pain in her arm. (Tr. 28).

Plaintiff also takes issue with the ALJ's decision to discredit Dr. Diessner's statements about her Fibromyalgia. Dr. Diessner stated in his notes from December 17, 2007, that Plaintiff's pain "sounds like some fibromyalgia." (Tr. 236). In a letter to Plaintiff's counsel dated April 30, 2008, Dr. Diessner stated he believed Plaintiff had fibromyalgia. (Tr. 248). The Court notes that the December 17th appointment is the only time in the record that Plaintiff complained of pain to a treating physician. Further, while Dr. Diessner stated in his notes that Plaintiff's pain sounded like fibromyalgia, he did not see fit to provide any treatment or refer Plaintiff for testing for her pain. As noted above, the Ozark Guidance Center had, on a prior occasion, sent Plaintiff to a free clinic for tests on her thyroid, yet no referral was made for Plaintiff's isolated complaint of pain on December 17, 2007. (Tr. 231-233). While four months later, in a letter to Plaintiff's counsel, Dr. Diessner suggested that Plaintiff's condition warranted seeing a rheumatologist, Dr. Diessner did not explain the basis for this delayed referral and there is no indication that Plaintiff made any further complaints of pain to a treating physician during this four-month period. (Tr. 248). The Court, therefore, concludes that the ALJ properly discredited Dr. Diessner's opinions as inconsistent with the medical evidence in the record as a whole.

Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

    **C.**    **RFC Assessment:**

The Court next turns to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person

can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005);  Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore an "ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of the examining agency's medical consultants, the reports of non-examining medical consultants, Plaintiff's subjective complaints, and Plaintiff's medical records.  He determined that Plaintiff could perform work activities at all exertional levels, but was mildly limited in the ability to understand, remember and carry out simple instruction, make judgments on simple work-related decisions, respond appropriately to usual work situations and routine work changes, and was moderately limited in the ability to understand, remember, and carry out complex instructions, and interact appropriately with the public, co-workers and supervisors.  In making the RFC determination, the ALJ noted the opinions of Dr. Brad Williams, a non-examining consultant, and Dr. Ronald McInroe, an examining consultant.  Both concluded that Plaintiff had only mild or moderate limitations in her ability to understand instructions and interact with the supervisors, co-workers, and the public. They further

concluded that Plaintiff should be able to perform simple, unskilled work tasks.

Plaintiff takes issue with the ALJ's decision to discredit the opinion of Dr. Diessner. In a letter to Plaintiff's counsel dated April 30, 2008, Dr. Diessner stated he believed that Plaintiff "would have a difficult time staying calm enough to function in a fulltime [sic] competitive work environment." (Tr. 248). "A treating physician's opinion is generally given controlling weight, but is not inherently entitled to it." Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006); See 20 C.F.R. § 404.1527(d)(2). "If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'" Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007); quoting Edwards, 314 F.3d at 967; see also 20 C.F.R. § 404.1527(d)(2). As the ALJ noted, Dr. Diessner's opinion in the letter was "not supported by contemporaneous treatment records from his facility." (Tr. 47). The treatment records from Ozark Guidance Center consistently note that Plaintiff was improving and that her medications were helping her symptoms. In addition, as the ALJ noted, Dr. Diessner provided no justification for his conclusion that Plaintiff would have a difficult time staying calm. Conclusory statements will not support a finding of a disability. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003). A review of the medical evidence in the record does not indicate that Plaintiff's examining physicians placed any restrictions on her activities that would preclude her from performing the RFC determined. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

    **D.**    **Hypothetical Question to the Vocational Expert:**

The Court now looks to the ALJ's determination that Plaintiff could perform substantial

gainful employment within the national economy. In making this determination the ALJ posed two hypothetical questions by interrogatory to VE Dale Thomas. (Tr. 156-162). First the ALJ asked:

> Please assume a hypothetical person of the claimant's age at the alleged onset date, which is 40 years old, with 12 years of education and the same work history. This person is mildly limited in the ability to understand, remember, and carry out simple instructions, make judgments on simple work related decisions, and respond appropriately to usual work situations and routine work changes. This person is moderately limited in the ability to understand, remember and carry out complex instructions, make judgments on complex work related decisions, and interact appropriately with the public, co-workers, and supervisors.

(Tr. 158). The VE found that the hypothetical individual would be able to perform Plaintiff's past relevant work as a janitor.[1] (Tr. 166). In addition, the VE found that the hypothetical individual would be able to perform work in the national economy as a production worker, sewing machine operator, or cashier. (Tr. 166). In a second hypothetical, the ALJ asked the VE to consider an individual the same as the person in the first hypothetical, except with a marked limitation in the ability to interact with the public, supervisors, and co-workers. (Tr. 160). In addition, this second hypothetical individual would require unscheduled and frequent breaks due to chronic leg and knee pain. (Tr. 160). The VE found that this individual would not be able to perform substantial gainful employment within the national economy. (Tr. 167).

      The ALJ relied upon the first hypothetical in making his finding that Plaintiff would be able to perform her past relevant work as a janitor. Plaintiff contends that the ALJ erred in this regard, arguing the ALJ should have relied on the second hypothetical because it more fairly represents Plaintiff's limitations. The Court finds that the ALJ did not err in relying on the first hypothetical. Both an examining and non-examining consultant found that Plaintiff had only moderate, not marked limitations, in her ability to interact with the public, supervisors, and co-workers. In addition, the

---

[1] Janitor, Heavy Unskilled (2), Dictionary of Occupation Titles (DOT) # 381.687-014

ALJ properly discredited Plaintiff's subjective complaints of pain. Plaintiff complained of pain to a treating physician only once and her own account of her daily activities was inconsistent with complaints of chronic pain.

The Court finds that the first hypothetical the ALJ posed to the VE fully set forth he impairments which the ALJ accepted as true and which were supported by the record as a whole. See Howe v. Astrue, 499 F.3d 835, 842 (8th Cir. 2007); Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff was not disabled, as she was able to perform her past relevant work as janitor. See Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

E.   **Fully and Fairly Develop the Record:**

Finally the Court rejects Plaintiff's contention that the ALJ failed to fully and fairly develop the record because he failed to send Plaintiff for a consultative examination for her physical pain due to fibromyalgia.

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 484, 488 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

In the present case, there was no reason for the ALJ to send Plaintiff for a consultative examination for her physical pain due to her alleged fibromyalgia. Plaintiff complained of pain to a treating physician only once and made no further attempts to seek treatment for pain. As stated earlier, the ALJ properly disregarded Plaintiff's complaints of pain because they were inconsistent with the medical evidence in the record and Plaintiff's own representations of her daily activities. After reviewing all the evidence of record, the Court finds the ALJ had substantial evidence to support his determination.

**V.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that Plaintiff's complaint should be dismissed with prejudice.

DATED this 11th day of July 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE